## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CAROL ROSENBERG** | : |
| **3511 NW 91st Avenue** | : |
| **Miami, FL 33172** | : |
|  | : |
|  | : Case No.  13-1554 |
| **Plaintiff,** | : |
|  | : **COMPLAINT** |
| **v.** | : |
|  | : |
| **UNITED STATES DEPARTMENT OF DEFENSE,** | : |
| **1600 Defense Pentagon** | : |
| **Washington, D.C. 20301-1600,** | : |
|  | : |
| **Defendant.** | : |
|  | : |

Plaintiff Carol Rosenberg, by her undersigned attorneys, alleges:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, brought by Carol Rosenberg, an award-winning military affairs journalist for *The Miami*

*Herald* who has reported on the detention of actual or suspected enemy combatants at the U.S.

Naval Base in Guantánamo Bay, Cuba ("Guantánamo") for more than a decade.  Ms. Rosenberg

brings this action for injunctive and other appropriate relief, seeking the release of agency

records from the United States Department of Defense (the "DOD").

2.      Through this action, Ms. Rosenberg seeks to compel DOD to provide limited

information about the cost to taxpayers of building the "Camp 7" detention facility at

Guantánamo and the firm(s) responsible for its construction.  Camp 7 is the facility built to house

so-called "high value" detainees moved to Guantanamo in 2006.  DOD recently disclosed that

the facility is structurally unsound and estimates it will cost $49 million to replace.  Ms.

Rosenberg also seeks to compel DOD to provide information about the continuing costs to taxpayers of operating Camp 7.

3. Ms. Rosenberg first sought this information in 2009 after the existence of Camp 7 was publicly acknowledged by DOD. For more than four years, DOD has failed to conduct a reasonable search for the requested documents, to disclose the requested documents, or to provide an adequate legal basis for withholding them. It should be compelled to do so forthwith.

## PARTIES

4. Ms. Rosenberg is a reporter for *The Miami Herald*, a newspaper published by The McClatchy Company. *The Miami Herald* is based at 3511 NW 91st Avenue, Miami FL 33172.

5. Defendant DOD is an agency of the federal government that has possession and control of the records that Ms. Rosenberg seeks. DOD is headquartered at 1600 Defense Pentagon, Washington, DC 20301.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action and personal jurisdiction over DOD pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

7. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

8. Ms. Rosenberg has exhausted all administrative remedies.

## FACTS

### DOD Has Confirmed the Existence of Camp 7 And Now Seeks Funds for Its Early Replacement

9. The United States Government's detention of hundreds of persons at Guantánamo as part of the Global War on Terror following the September 11, 2001 attacks has generated substantial controversy since the first detainees arrived in southeast Cuba in January 2002. President Barack Obama has described the detention center as "expensive," "inefficient," and a

"recruitment tool for terrorists."  During the 2008 Presidential campaign he pledged to close it, and signed an executive order in January 2009 calling for the facility to be shuttered within a year.  The deadline was missed, and the closure process has proven to be a slow one beset by political and practical challenges.

10.     At its peak the detention facility held approximately 660 prisoners; approximately 164 detainees now remain in Guantánamo.  Most are detained either at a maximum-security facility known as "Camp 5"or a medium-security facility known as "Camp 6."

11.     Since 2006, an estimated sixteen "high value" detainees, including detainees accused of planning the September 11, 2001 attacks, have been held at "Camp 7," which was built in secret at a location within the 45-square mile U.S. Naval Station at Guantánamo Bay. The existence of Camp 7 has been publicly reported since early 2008.  *See, e.g.*, Carol Rosenberg, "'Platinum' captives held at off-limits Gitmo camp," *Miami Herald* (Feb. 7, 2008).

12.     In early 2009 Admiral Patrick Walsh, then Vice Chief of Naval Operations, publicly confirmed the existence of Camp 7.

13.     More recently, defense lawyers representing individuals held at Camp 7 have been allowed to inspect the facility.  However, most aspects of Camp 7 – including its original cost and its continued operating costs – have remained secret even as costs for all other Guantánamo facilities have been disclosed to the public.

14.     The disclosed details about costs of the Guantánamo detention facility confirm the accuracy of the President's characterization of it as both "expensive" and "inefficient."  For example, a report to Congress by the DOD Comptroller made public in July 2013 put this year's expense to operate, staff, and maintain the prison complex holding fewer than 200 detainees at $454.1 million.  *See generally* Carol Rosenberg, "Total U.S. tab tops $5B for Guantánamo

prison," *Miami Herald* (July 31, 2013). The report also noted that the Pentagon will have spent a total of $5.242 billion in taxpayer funds on the facility by the end of 2014.

15.     Those costs do not appear to include any costs associated with Camp 7.

16.     In March 2013 DOD's Southern Command, which oversees Guantánamo, requested $49 million in additional funds to replace Camp 7. According to military officials, Camp 7 "was apparently built on a seasonal streambed and its foundation is buckling." *See* Charlie Savage, "Pentagon Denies Money for Guantánamo Overhaul, Including a New Semi-Secret Prison," *N.Y. Times* (Sept. 25, 2013), at A22. According to a military spokesman, the Pentagon denied the funding request and DOD is now seeking through "various measures" to "mitigate some of the conditions of the facilities." *Id.*

17.     DOD officials have publicly disclosed the costs to taxpayers of other previously secret Guantánamo facilities. In December 2011 DOD officials revealed the existence of a previously secret "Camp Five-Echo," a disciplinary block for those non-compliant detainees in Camps 5 and 6. *See* Carol Rosenberg, "Secret Guantánamo cell block cost nearly $700,000," *Miami Herald* (Dec. 24, 2011). Built secretly in November 2007, when the existence of the facility was confirmed in December 2011, DOD also provided a photo and descriptions of the facility, and disclosed its $690,000 price tag to taxpayers.

18.     Other than its estimated $49 million replacement cost, DOD has not disclosed the cost to taxpayers of building Camp 7, identified the contractor(s) responsible for its construction, or provided the annual costs of maintaining and operating Camp 7.

### Ms. Rosenberg Submitted a Limited, Clear FOIA Request
### Seeking the Costs of Camp 7 Construction and Operation

19.     On April 9, 2009, Ms. Rosenberg submitted a FOIA request ("the Request") to DOD. A true and correct copy of the Request is attached hereto as Exhibit A.

4

20.     The Request asked DOD to disclose documents that would "reveal how much was spent to build a structure known as Camp 7 at the U.S. Naval Base in Guantánamo Bay, Cuba." The Request made clear that Ms. Rosenberg specifically sought documents sufficient to disclose "the costs and contracting arrangements for the facility, which Adm. Walsh describes as akin to a U.S. SuperMax."

21.     The Request separately asked for "documents that describe how much it costs to run the facility, which is colloquially known on the ground to be administered by Task Force Platinum, a DOD Unit."

22.     In an undated initial response DOD identified as an "Interim Response," DOD confirmed receipt of Ms. Rosenberg's Request on April 10, 2009.  A true and correct copy of the Interim Response is attached hereto as Exhibit B.

23.     The Interim Response stated that DOD would be unable to respond within the 20-day statutory period under FOIA in light of "(a) the need to search for and collect records from a facility geographically separated from this Office; (b) the potential volume of records responsive to your request; and (c) the need for consultation with one or more other agencies or DoD components having a substantial interest in either the determination or the subject matter of the records."  For these reasons, the Request was assigned to DOD's "complex processing queue."

24.     DOD then took more than a year to respond substantively to the Request.

### DOD Found a Single Responsive Document and Denied the Request

25.     By letter dated June 4, 2010, DOD provided its response to the Request ("the Response").  A true and correct copy of the Response is attached hereto as Exhibit C.

26.     The Response stated that "[a] search of the record systems maintained by Joint Task Force Guantánamo and the Undersecretary of Defense for Policy … revealed one record" responsive to the Request, "totaling one page."

5

27.     The Response denied access to this single page on three grounds, alleging that (1) the document is properly classified and therefore exempt under 5 U.S.C. § 552(b)(1),  (2) the document "pertain[s] solely to the internal rules and practices of the agency" and therefore is exempt under 5 U.S.C. § 552(b)(2),  and (3) disclosure would "constitute a clearly unwarranted invasion of the personal privacy of individuals" and the document is therefore exempt under 5 U.S.C. § 552(b)(6).

**DOD Denied Ms. Rosenberg's Appeal**

28.     On June 26, 2010, Ms. Rosenberg timely appealed the Response administratively ("the Appeal").  A true and correct copy of her Appeal is attached hereto as Exhibit D.

29.     In the Appeal, Ms. Rosenberg questioned the grounds asserted by DOD for withholding records relating to the costs of Camp 7:  "The costs of all other facilities have been made public at Guantánamo without impeding the detention and interrogation mission, the privacy issue is applicable to individuals and surely a company or contractor was involved in this building and the facility's existence has already been disclosed and described by VADM Walsh."

30.     More than three years passed without a response to her administrative appeal.

31.     On August 30, 2013, DOD issued a decision denying the Appeal and affirming the Response ("the DOD Decision").  A true and correct copy of the DOD Decision is attached hereto as Exhibit E.

32.     The DOD Decision upheld the refusal to disclose the single document on only two grounds; specifically, because (1) the document is allegedly properly classified and therefore exempt under 5 U.S.C. § 552(b)(1); and (2) disclosure allegedly would "constitute a clearly unwarranted invasion of the personal privacy of individuals," and the document is therefore exempt under 5 U.S.C. § 552(b)(6).  The DOD Decision did not rely on 5 U.S.C. § 552(b)(2).

**FIRST CAUSE OF ACTION**
<u>(Violation of FOIA for failure to conduct a reasonable search)</u>

33.     Ms. Rosenberg repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

34.     DOD is an agency subject to FOIA, 5 U.S.C. § 552(f), and therefore had an obligation to conduct a search reasonably calculated to uncover all documents responsive to the Request.  DOD's claim to have located only a single, one-page document disclosing the costs of building and operating Camp 7 manifestly fails to satisfy its obligations to collect responsive records under FOIA, 5 U.S.C. § 552(a)(3).

**SECOND CAUSE OF ACTION**
<u>(Violation of FOIA for failure to make records available)</u>

35.     Ms. Rosenberg repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

36.     DOD is an agency subject to FOIA, 5 U.S.C. § 552(f), and therefore must disclose in response to a FOIA request all responsive records in its possession at the time of the Request that are not specifically exempt from disclosure under FOIA, and must provide a lawful reason for withholding any documents as to which it is claiming an exemption.

37.     DOD's failure promptly to disclose the documents requested by Ms. Rosenberg violates FOIA, 5 U.S.C. § 552(a)(3)(A).

**REQUEST FOR RELIEF**

**WHEREFORE**, Ms. Rosenberg respectfully requests that this Court:

a.      Expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

b.      Declare that the documents sought by the Request, as described in the

foregoing paragraphs, are public records under 5 U.S.C. § 552 and must be

disclosed;

c.      Order DOD to provide those documents to Ms. Rosenberg within 20

business days of the Court's order;

d.      Award Ms. Rosenberg the costs of this proceeding, including reasonable

attorney's fees, as authorized by FOIA; and

e.      Grant Ms. Rosenberg such other and further relief as this Court deems just

and proper.


Dated:  October 9, 2013                        Respectfully submitted,

                                               LEVINE SULLIVAN KOCH & SCHULZ, LLP

                                               By:     /s/ Chad R. Bowman                      
                                                       Chad R. Bowman, (D.C. Bar No. 484150)
                                                       1899 L Street, N.W., Suite 200
                                                       Washington, D.C.  20036
                                                       Telephone: (202) 508-1100
                                                       Fax: (202) 981-9888
                                                       E-mail: cbowman@lskslaw.com

                                                       David A. Schulz
                                                       321 West 44th Street, Suite 1000
                                                       New York, NY 10036
                                                       Telephone: (212) 850-6100
                                                       Fax: (212) 850-6299
                                                       E-mail: dschulz@lskslaw.com

                                               *Counsel for Plaintiff Carol Rosenberg*