**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
CAROL ROSENBERG,                           )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )   Civil Action No. 1:13-cv-01554  (BAH)
                                           )
UNITED STATES DEPARTMENT                   )
OF DEFENSE,                                )
                                           )
                                           )
                                           )
                    Defendant.             )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE**
**DEPARTMENT OF DEFENSE'S MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

In this Freedom of Information Act ("FOIA") action, plaintiff Carol Rosenberg ("Plaintiff") requested from the United States Department of Defense ("Defendant" or "the Department") documents revealing the amount of money spent to build a structure known as Camp 7 at the U.S. Navy Base at Guantanamo Bay, Cuba.  After receiving Plaintiff's April 9, 2009 FOIA request, Defendant conducted a comprehensive search and determined that the one document responsive to Plaintiff's FOIA request is classified in accordance with Executive Order 13,526, Section 1.4(c), as it pertains to intelligence activities, sources or methods, and therefore withheld the document in its entirety.  *See* Defendant's Statement of Material Facts Not in Genuine Dispute ("Def. SOMF") ¶ 4.  As discussed in this memorandum and the attached Declaration of Karen L. Hecker ("Hecker Decl."), the Department has satisfied its burden under the FOIA, 5 U.S.C. § 552.  *See also* Classified Declaration, submitted *in camera* and *ex parte*. Indeed, the Department has conducted a thorough search for documents and has properly

withheld the one responsive document based upon statutory exemptions to disclosure—specifically FOIA exemptions (b)(1), (b)(5), and (b)(6).   Accordingly, the Court should grant summary judgment in favor of the Department.

## BACKGROUND

Defendant confirmed receipt of Plaintiff's FOIA request on April 10, 2009, with an Interim Response.  *See* Def. SOMF ¶ 2.  In a letter dated June 4, 2010, Defendant provided Plaintiff with a final response to her FOIA request, noting that Defendant interpreted Plaintiff's request as seeking all documents that reveal the cost of building Camp 7, and that Defendant had located one responsive record.  *See* Def. SOMF ¶ 3.   For the following reasons, the Court should grant the Department summary judgment.

## ARGUMENT

### A.    Statutory Background and Standard of Review

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).  But Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also* 5 U.S.C. § 552(b). While these exemptions are to be "narrowly construed," *Abramson*, 456 U.S. at 630, courts must not fail to give the exemptions "meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The FOIA thus "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information

confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 925 (D.C. Cir. 2003) (citation omitted).

Summary judgment is the procedure by which courts typically resolve FOIA actions. *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007). As with non-FOIA cases, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). For a defendant agency to prevail on a motion for summary judgment in FOIA litigation, it must satisfy two elements. First, it must "demonstrate that [it] conducted an adequate search which was reasonably calculated to uncover all relevant documents. . . . Second, materials that are withheld must fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales,* 404 F. Supp. 2d 246, 252-53 (D.C. Cir. 2005) (citations omitted). A court reviews an agency's response to a FOIA request *de novo. See* 5 U.S.C. § 552(a)(4)(B). As discussed below, Defendant has satisfied both elements in this case because it conducted an adequate search and correctly withheld the one responsive document pursuant to statutory exemptions.

**B.      Defendant Conducted a Reasonable and Adequate Search for Responsive Documents**

The Department should prevail on summary judgment because it undertook a search that was "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983). On summary judgment in a FOIA case, the agency must demonstrate that it has conducted an adequate search – that is, "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." *Id.* "[T]he issue to be

resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ("a search is not unreasonable simply because it fails to produce all relevant material.").

The process of conducting a reasonable search requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and "is hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. U.S. Dep't of Justice,* 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted). Therefore, in evaluating the adequacy of a search, courts accord an agency "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.1991) (quoting *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C. Cir. 1981)).

As described in the attached Declaration of Karen L. Hecker, Defendant's search was conducted in a manner reasonably likely to uncover all responsive, non-duplicative records. Hecker Decl. ¶ 3.  In that regard, Defendant's Office of Detainee Policy, which "advise[s] the Secretary of Defense on detention policy and strategy" and "serve[s] as a focal point for detainee and detention matters with the Department" conducted the search.  Hecker Decl. ¶ 3.  There is no genuine dispute that the steps Defendant took to identify the responsive record constituted an adequate search meeting Defendant's FOIA obligations.  Hecker Decl. ¶ 3. *See Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (noting that an agency demonstrates the adequacy of its search by

"'describ[ing] what records were searched, by whom, and through what processes.'" (citation omitted).

In sum, the Department searched the sources it identified as reasonably likely to contain responsive documents and concluded that the search was adequate.  Hecker Decl. ¶ 4.  There is, therefore, no genuine dispute that the Department satisfied the search requirements of FOIA.

**C.    The Department Has Properly Withheld the Document as Classified Under FOIA Exemption (b)(1), Pursuant to Section 1.4(c) of Executive Order 13,526**

Exemption (b)(1) protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The withheld information at issue in this case is properly classified under Executive Order 13,526 and meets both of the requirements for nondisclosure under exemption (b)(1). Hecker Decl. ¶ 4.

Under Executive Order 13,526, information may be classified if it meets the following conditions:

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Executive Order 13,526, Section 1.1(a).

Given the significance of classified information, courts are particularly respectful of classification decisions by the Executive Branch and afford those decisions "substantial weight." *See, e.g., Larson v. Dep't of State,* 565 F.3d 857, 864 (D.C. Cir. 2009). Moreover, it is not

appropriate for courts to substitute their judgment for that of the executive with regard to classified information. *See Larson*, 565 F.3d at 865; *Halperin v. CIA,* 629 F.2d 144, 148 (D.C. Cir. 1980) ("Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case."). In short, as the D.C. Circuit has explained, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007).

The Hecker Declaration demonstrates that Defendant withheld the document as classified because it contains information "properly classified and that continues to meet the classification criteria of Executive Order 13,526 regarding intelligence activities, sources, or methods." Hecker Decl. ¶ 4. Although there is nothing more that can be said on the public record, the Department has submitted an *ex parte, in camera*, classified declaration in further support of its withholding under Exemption 1. The Court should therefore grant summary judgment for the Department on this issue as there is no genuine dispute that the document is properly classified.

**D.    The Department Has Properly Withheld the Document as Deliberative Process Privileged Under FOIA Exemption (b)(5)**

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (citations omitted). The privilege shields from discovery materials that are both pre-decisional and deliberative, *see Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993), and is thought to "enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Klamath Water Users Protective Ass'n,* 532 U.S. at 8-9 (internal quotation marks and citations omitted). To qualify for

Exemption 5 protection under the deliberative process privilege, 'an agency's materials must be both predecisional and a part of the deliberative process.'" *Nat'l Inst. Of Military Justice v. U.S. Dep't of Def.,* 512 F.3d 677, 680 n.4 (D.C. Cir. 2008) (quoting *Formaldehyde Inst. v. Dep't of Health & Human Servs.,* 889 F.2d 1118, 1121 (D.C. Cir. 1989). Courts "deem a document predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Public Citizen, Inc. v. Office of Mgmt. & Budget,* 598 F.3d 865, 874 (D.C. Cir. 2010) (quoting *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 151 (D.C. Cir. 2006)). Among such documents that are to be protected as deliberative process records are those "prepared in order to assist an agency decisionmaker in arriving at his decision." *Quarles v. Dep't of the Navy,* 893 F.2d 390, 392 (D.C. Cir. 1990).

In the instant matter, the Hecker Declaration shows that the document was prepared to assist and guide senior agency policy makers in their decision-making role. Hecker Decl. ¶ 5. Hence, disclosure of the document would effectively chill the candid type of communication that occurred in the decision-making process here, and would thus defeat the purpose of exemption 5. Accordingly, the Court should find that the document is properly withheld under exemption 5.

**E.      The Department Has Properly Withheld the Document as Protected From Disclosure Under FOIA Exemption (b)(6)**

The Department invoked exemption (b)(6) to protect information identifying lower-level Department employees who are identified in the document. Hecker Decl. ¶ 6. Although by its terms, exemption (b)(6) exempts from disclosure information about individuals in "personnel and medical files and similar files" whose disclosure "would constitute a clearly unwarranted invasion of personal privacy," (5 U.S.C. § 552(b)(6)), the phrase "similar files" has been construed broadly to effectuate Congress's primary purpose in establishing the exemption – "to protect individuals from the injury and embarrassment that can result from the unnecessary

disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). An agency, thus, may protect personal information under exemption (b)(6), so long as the information is in a government file and "applies to a particular individual." *Id.* at 602; *see also New York Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990). This "minimal" threshold "ensures that FOIA's protection of personal privacy is not affected by the happenstance of the type of agency record in which personal information is stored." *Washington Post Co. v. Department of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982). Proper invocation of exemption (b)(6) requires an agency to balance the individual's right to privacy against the public's interest in disclosure. *See U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). Specifically, the agency must determine whether disclosure of the information threatens a protectible privacy interest; and, if so, the agency must weigh that privacy interest against the only relevant public interest – "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties." *See U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994); *see also Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). Here, that balance tilts decidedly against disclosure.

Although the subject of the U.S. Navy Base at Guantanamo Bay has received significant media attention, "publicity in the popular media cannot vitiate [a] FOIA privacy exemption." *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981). "[L]ower-level [government] officials . . . generally have a stronger interest in personal privacy than do senior officials." *Forest Serv. Employees for Envt'l Ethics v. U.S. Forest Service*, 524 F.3d 1021, 1025 (9th Cir. 2008). Courts have recognized such employees' cognizable privacy interest in "avoiding the 'embarrassment, shame, stigma and harassment' that would arise from their public association with [an] incident" that "was met with heavy criticism." *Id.* at 1026. Here, that

conclusion is all the more compelled. As explained in the attached Hecker Declaration, the Department withheld the names and other identifying information of lower-level Department employees who provided information as to the amount spent to build Camp 7.  Hecker Decl. ¶ 6. Whatever slight public interest there might be in knowing everyone who provided information regarding the amount spent to build Camp 7, such disclosure is certainly outweighed by these lower-level employees' interest in not being identified as working on matters related to Guantanamo Bay, as well as their privacy and safety.  Hecker Decl. ¶ 6.  Thus, disclosure of their identities or other identifying information would constitute a clearly unwarranted invasion of their privacy, and the Department properly withheld such information pursuant to exemption (b)(6).

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that the Court grant this motion and enter summary judgment in favor of the Department.

Dated:  January 31, 2014

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch
Civil Division

 /s/ Kenneth E. Sealls
KENNETH E. SEALLS , D.C. Bar # 400633
United States Department of Justice
Civil Division,  Federal Programs Branch

20 Massachusetts Avenue N.W., Rm. 6136
Washington,  D.C. 20530
Tel.: (202) 305-1953
Fax: (202) 616-8460
Kenneth.Sealls@usdoj.gov

Counsel for Defendant